## MARTINEZ v. LA ASOCIACION DE SENORAS DAMAS DEL SANTO ASILO DE PONCE.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR PORTO RICO.

No. 83. Argued January 21, 1909.—Decided February 23, 1909.

All relations between Spain and Porto Rico having been severed by the cession of that Territory by the Treaty of Paris, a corporation organized under the laws of Spain for purely local and charitable purposes in Porto Rico is not to be regarded as a citizen of Spain within the meaning of the provisions of the act of April 12, 1900, c. 191, 31 Stat. 77, as amended by the act of March 2, 1901, c. 812, 31 Stat. 953, relating to the jurisdiction of the District Court of the United States for Porto Rico, nor is such a corporation a citizen of the United States within the meaning of such provision; if it is a citizen of any country it is a citizen of Porto Rico.

The people of Porto Rico have been created by Congress and exist as a body politic subject only to the usual reserved power of annulment of territorial legislation; and the government of Porto Rico under the organic act is charged with the creation and control of corporations strictly local in character, and corporations of that nature organized prior to the cession of the island are to be regarded for jurisdictional purposes as citizens of Porto Rico.

While by Article IX of the Treaty of Paris between Spain and the United States provision is made for Spanish subjects, natives of the peninsula, to preserve their allegiance to Spain, that article has no reference to corporations; nor is there any other provision of the treaty providing therefor. *Quære* and not decided, what the citizenship now is of Spanish corporations doing business in Porto Rico prior to its cession by the Treaty of Paris to the United States.

THE facts are stated in the opinion.

*Mr. Fritz von Briesen,* with whom *Mr. Charles M. Boerman* was on the brief, for appellants.

*Mr. John W. Yerkes,* with whom *Mr. George E. Hamilton,*

*Mr. M. J. Colbert* and *Mr. John J. Hamilton* were on the brief, for appellee.

MR. JUSTICE MOODY delivered the opinion of the court.

The appellee, alleging itself to be "a charitable corporation, organized and existing under the laws of the Kingdom of Spain," brought a bill in equity in the District Court of the United States for Porto Rico against the appellants, alleging them to be citizens of Porto Rico. The object of the suit, generally described, is to assert title to certain lands in Porto Rico, and its determination turns upon the construction of the will of Juan Bautisti Silva, an inhabitant of Porto Rico, who died in 1875. The suit, therefore, does not arise under the Constitution, laws or a treaty of the United States. A decree was entered in favor of the plaintiff, and the defendants appealed to this court.

Before entering upon a consideration of the merits of the cause the jurisdiction of the court below to entertain it, which is questioned, must be passed upon. The District Court of the United States for Porto Rico was created, and its jurisdiction defined, by the act of April 12, 1900, establishing a civil government for Porto Rico, 31 Stat. 77, chapter 191, as amended by the act of March 2, 1901, 31 Stat. 953, chapter 812. By § 34 of the first act it was provided that—

"Porto Rico shall constitute a judicial district to be called the District of Porto Rico, . . . the District Court for said district shall be called the District Court of the United States for Porto Rico . . . and shall have, in addition to the ordinary jurisdiction of District Courts of the United States, jurisdiction of all cases cognizant in the Circuit Courts of the United States, and shall proceed therein in the same manner as a Circuit Court."

The jurisdiction was further defined in § 3 of the last act, which provided that "the jurisdiction of the District Court of the United States for Porto Rico in civil cases shall, in addition

to that conferred by the act of April 12, 1900, extend to and embrace controversies where the parties, or either of them, are citizens of the United States, or citizens or subjects of a foreign State or States, wherein the matter in dispute exceeds, exclusive of interest or costs, the sum or value of one thousand dollars."

If the court below had jurisdiction, it must be under the amending act and because the plaintiff was either a citizen of the United States or a citizen or subject of a foreign state. No other ground of jurisdiction has been or can be suggested. It was found by the District Court that the plaintiff was a citizen or subject of Spain and the jurisdiction was sustained upon that theory. Counsel in this court have attempted to sustain the jurisdiction on the ground that the plaintiff, if not a citizen or subject of Spain, is a citizen of the United States. If the plaintiff was neither a citizen of the United States, nor a citizen or subject of Spain, it is clear that the court was without jurisdiction.

We assume, in favor of the plaintiff, that it was a corporation organized in 1863 by a decree of the Spanish Crown. That decree incorporated an asylum of charity in Ponce. The purposes of the incorporation are described in article 1 of the by-laws, which follows;

"This association recognizes as its principal object the alleviation of human suffering, and for this purpose it will establish an asylum for the poor of the district. When its resources permit it to give its attention to other objects related to its purpose it will establish schools for poor children of both sexes, under the supervision of Sisters of Charity."

The incorporators were all residents of Ponce, and all the purposes of the corporation were to be accomplished and all its business done in that locality.

The first question is, whether, after the ratification of the treaty of peace between the United States and Spain, the plaintiff corporation continued to be a citizen or subject of Spain.

It is assumed, in passing upon this question, that Congress

in employing the word citizen in this connection intended to include corporations, in view of the decisions of this court that the word has that meaning when used in the definition of the jurisdiction of the Circuit Courts of the United States. *St. Louis & San Francisco Railway* v. *James,* 161 U. S. 545.

By the treaty of peace (30 Stat. 1754), Spain ceded Porto Rico to the United States and thereby parted with all sovereignty over that island. Careful provision was made that the cession should not impair the property or rights of corporations, associations or individuals. Article VIII. It is clear, however, that thereafter the duty to protect property and rights within the ceded territory rested upon the United States. An opportunity was afforded to Spanish subjects, natives of the peninsula, to preserve their allegiance to the crown of Spain by making within a limited time a declaration to that effect. Article IX. This article obviously had no reference to corporations. No other provisions of the treaty seem relevant to the question before us.

We are of opinion that the cession of Porto Rico by Spain to the United States severed all relations between Spain and this corporation, and that thereafter it cannot be regarded in any sense as a citizen or subject of Spain. Spain has no duty to or power over it. We confine this statement to a corporation like the one before us, formed for charitable purposes and limited in its operations to the ceded territory. A different question (which need not be decided) would be presented if the corporation had other characteristics than those possessed by the one under consideration, as, for instance, if it were a Spanish trading corporation, with a place of business in Spain but doing business by comity in the island of Porto Rico.

The next question is whether the plaintiff corporation is a citizen of the United States. Its status during the period between the cession and the passage of the act to provide a civil government for the island need not be determined. That act created a form of government for Porto Rico and its adjacent islands, in which there was exhibited, with some modifications,

the characteristic American separation of the legislative, executive and judicial powers. The United States has never granted to any territory organized by act of Congress complete self-government, and Porto Rico is no exception to the rule. Indeed, though the act confers a considerable measure of self-government, for reasons deemed sufficient by Congress, it stops short of the power usually conferred upon territories within the continent. This organic act has the provision common to most, if not all, our territories, whether fully incorporated into the United States or not, that Congress may, if it deem advisable, annul all laws enacted by the local legislative assembly. Subject to these limitations, a body politic, under the name of The People of Porto Rico, with a citizenship of its own, is created (§ 7); existing laws, not in conflict with the applicable laws of the United States, are continued in force until altered, amended or repealed by the legislative assembly or by Congress (§ 8); public property acquired by the United States from Spain is placed under the control of the local government, and the legislative assembly is given power to legislate with respect to it (§ 13); the legislative authority is given "power by due enactment to amend, alter, modify or repeal any law or ordinance, civil or criminal, continued in force by this act" (§ 15); the Governor is enjoined faithfully to execute the laws, and given to that end the applicable powers of a Governor of a Territory of the United States (§ 17); the legislative assembly of Porto Rico is constituted (§ 27); and the scope of the legislative power is fully described in § 32, as follows:

"That the legislative authority herein provided shall extend to all matters of a legislative character not locally inapplicable, including power to create, consolidate, and reorganize the municipalities, so far as may be necessary, and to provide and repeal laws and ordinances therefor; and also the power to alter, amend, modify, and repeal any and all laws and ordinances of every character now in force in Porto Rico, or any municipality or district thereof, not inconsistent with the provisions hereof: *Provided, however,* That all grants of franchises, rights,

and privileges or concessions of a public or quasi-public nature shall be made by the executive council, with the approval of the governor, and all franchises granted in Porto Rico shall be reported to Congress, which hereby reserves the power to annul or modify the same."

In the form of government, which is typically American, the creation and control of corporations is exclusively a legislative function.  We are of opinion that the effect of the organic act is to intrust that function, so far as it relates to a corporation of the kind under consideration, whose essential qualities need not be repeated, to the government of Porto Rico; and that such a corporation is now, if a citizen of any country, a citizen of Porto Rico.  We need not consider whether the corporation has more than a *de facto* existence, subject to the will of the Porto Rican legislature.  It follows that the court below had no jurisdiction of this cause.

*The decree is reversed and the cause remanded to the District Court of the United States for Porto Rico, with instructions to dismiss the bill, without prejudice, for want of jurisdiction.*