IRENE CUEBAS Y ARREDONDO, Widow of Monge,

*v.*

EL BANCO TERRITORIAL Y AGRICOLA, FELIPE CUEBAS Y ARREDONDO, AND FRANCISCO ANTONGIORGI.

---

Mayaguez, Equity, No. 144.

1. A complainant filed a bill against three respondents to foreclose a mortgage against the mortgagor and his meantime mortgagees. Several years afterwards, so as to save the jurisdiction, the bill was dismissed as to all save the original mortgagor. In the meantime, because of the failure of complainant to file a notice of *lis pendens* or annotate the pendency of the suit in the registry of property, the submortgagee secured the cancelation of complainant's lien, foreclosed his mortgage in an insular court, took possession of the property, and has been improving it for several years and may have disposed of it. *Held:* That because of complainant's delay, the staleness of the demand, the negligence in not filing notice of *lis pendens*, and the knowledge complainant had that the submortgagee is, and always was, the real party in interest, will preclude the granting of any relief, and the bill will be dismissed.

2. Where courts are of concurrent jurisdiction the one which first takes possession of the *res* is entitled to hold it as against the other.

3. A tribunal where the real party in interest can be sued is the proper forum for a complainant.

Cuebas y Arredondo v. El Banco Territorial y Agricola.

4. A decree to be entered *nunc pro tunc* on a *pro confesso* as of a date nearly three years ago before the death of a mortgagor, so as to avoid the necessity for reviving the suit against his heirs, will not be granted, especially when it appears that such deceased mortgagor was not at the time of his death the real party in interest, and when, because of complainant's negligence in failing to file a notice of *lis pendens*, such real party in interest has in the meantime foreclosed upon the property in question. To grant such a decree would be but to bring courts of concurrent jurisdiction into unseemly conflict, and result in circuity of action.

Opinion filed September 7, 1909.

———

*Messrs. N. B. K. Pettingill* and *F. L. Cornwell,* attorneys for the complainant.

*Messrs. T. D. Mott, Jr.,* and *J. A. Ewing,* attorneys for the respondents.

RODEY, Judge, delivered the following opinion:

This cause is before us on a last effort of the complainant, in which she tries to induce us to grant her a decree against the now sole respondent, Felipe Cuebas y Arredondo, on her bill taken as confessed against him under date of July 11, 1904.

The original bill was filed more than five years ago, on March 22, 1904. It has been one of the most persistently fought cases the docket of this court exhibits. The useless pleading indulged in is quite voluminous, and it has again taken us more than a day to examine the same in order to get an idea of the situation. See our opinion regarding one phase of this same case

under date of June 1, 1907, in 3 Porto Rico Fed. Rep. p. 67. See also a later opinion under date of July 31, 1908, in 4 Porto Rico Fed. Rep. 208.

The suit was originally brought against three respondents as above set out, but on January 18, 1907, after our opinion in Vallecillo y Mandry v. Bertran, 2 Porto Rico Fed. Rep. 46, it was dismissed as to the respondent Francisco Antongiorgi, he being a Porto Rican and not an indispensable party, leaving only the two remaining respondents, Felipe Cuebas y Arredondo and El Banco Territorial y Agricola, the former being a citizen of the United States and the latter being then supposed to be a Spanish corporation. After our opinion of July 31, 1908, aforesaid, wherein we reluctantly held, under the *stare decisis* effect of the ruling of a former incumbent of this bench in Borrero v. Compañia Anonyma de la Luz Electrica, 1 Porto Rico Fed. Rep. 142, that the said Banco was a Spanish corporation, although it had pleaded to the contrary, the cause remained in abeyance until the Supreme Court of the United States, on February 23, 1909, in the Asilo de Damas Case, reversed the holding of this court as reported in 2 Porto Rico Fed. Rep. 369, that corporations organized in Porto Rico in Spanish days were still Spanish corporations after the change of sovereignty. In obedience to this holding of the Supreme Court of the United States (213 U. S. 20, 53 L. ed. 679, 29 Sup. Ct. Rep. 327), we called for a further hearing on the plea to the jurisdiction in the case at bar, and thereafter, under date of June 7, 1909, we filed a memorandum holding, under force of the Asilo de Damas decision, that the respondent El Banco Territorial y Agricola was at least not a Spanish corporation, and setting forth that,

unless within five days from that date the bill could be so amended as to give the court jurisdiction, the case would stand dismissed without further action of the court.

Thereafter, on June 10, 1909, the complainant, by her counsel, came in and formally dismissed the cause as to the said Banco Territorial y Agricola, and setting forth that, as the cause had theretofore been dismissed as to the respondent Antongiorgi, complainant now elected to proceed with the cause against the sole remaining respondent, Felipe Cuebas y Arredondo, against whom the decree *pro confesso* had so been entered as aforesaid, under date of July 11, 1904, some three and a half months after the filing of the bill.

Counsel for complainant strenuously insist that on this state of pleading their client is, without revivor, entitled to a decree against such remaining respondent, although they confess in open court that said respondent Felipe Cuebas y Arredondo died more than two years ago. They further insist that their client is entitled to said decree to be entered as of a date *nunc pro tunc* before said respondent's death. They further confess that the several answers filed in the cause (there were three of them) during all this voluminous pleading, show that their said client, the complainant, is not entitled to, and she is not asking for a decree holding her alleged lien to be superior to that of the respondent El Banco Territorial y Agricola, but junior to the same, and that their client is not asserting any superior mortgage rights against the said Banco, and that all the advantage the decree asked for will be to the complainant, is that it will enable her to go into the insular courts and there litigate whatever rights she may have in and to the property in question as against the said Banco. The request is a rea-

Cuebas y Arredondo v. El Banco Territorial y Agricola.

sonable one if it can be granted, under all the facts and circumstances of the case.

No later than this present week, counsel for complainant filed a painstaking brief which we have examined with great care, strenuously insisting upon the right of their client to this decree on her unsworn bill so taken as confessed. We have examined the bill, as well as all of the pleadings in the cause, with much more than ordinary care because of this long delay and the bitterly fought contentions of the respective parties, which in a measure were excusable until the holding of the Supreme Court of the United States regarding the citizenship of corporations or associations of Spanish birth now still remaining in Porto Rico, as aforesaid.

The facts in the case as gathered from the voluminous exhibits, papers, pleadings, transcripts of evidence, etc., in the files, are substantially as follows: In the year 1875, one Dr. Salvador Carbonell owned a plantation of 410 cuerdas of land known as "Carmelita," situated in the barrio of Bajura, in the municipality of Cabo Rojo, in the Mayaguez district of this island. On October 7th of that year, said Carbonell, through the respondent Felipe Cuebas y Arredondo, conveyed said plantation to the firm of Moses, Levy & Company of London, England, and the latter firm at once mortgaged the whole of said estate to one José Ramon Carbonell, of that same district in Porto Rico, who was some relative of their grantor, to secure said gentleman in the payment of 12,000 dollars, or pesos. A few days later, on November 25, 1875, this same firm of Moses, Levy, & Company sold their equity of redemption outright to their said agent, the respondent Felipe Cuebas y Arredondo, and the latter in and by the terms of the in-

strument under which he received the property, assumed the payment of the debt aforesaid due to said José Roman Carbonell. Some three months and five days after the latter transfer, and on March 30, 1876, this José Ramon Carbonell sold this mortgage of his and the credit it represented to one José Maria Monge of the same place, he being the husband of the complainant Irene Cuebas y Arredondo. On January 26, 1891, José Maria Monge made a will in and by which his said wife, the complainant Irene Cuebas y Arredondo, became his sole heir, and became entitled to administer his estate extrajudicially. Monge died one month and thirteen days later, on March 11, 1891. A year and twenty-one days after the death of Monge, on April 1, 1892, the respondent Felipe Cuebas y Arredondo, in a power of attorney he was executing to his wife Josefa Padilla y Urutia, acknowledged that this debt of 12,000 pesos was still due to the estate of Monge, and confessed that, no matter about the time that had elapsed, the debt was still due and subsisting and should be paid, etc. Neither this power of attorney, nor the meantime transfers, nor the Monge will were inscribed in any registry of property, being, as it seems, simply left in the several protocols of the notaries making them. In fact, it is set forth in the three answers of El Banco Territorial y Agricola, which were filed through this litigation, that the only mention of any lien upon the property in question, in either the old or new registries (anotadurias) of property of the said district, was its mention in the Carbonell mortgage of November 25, 1875. If this is true,—and the bill is silent on the subject,—then both the old and the new registry of property remained without containing any mention of this alleged mortgage, save as afore-

said, for over twenty years and six months, until on June 3, 1896, when the respondent El Banco Territorial y Agricola without, as it repeatedly states, having any knowledge of the keeping alive of said claim, and, as it alleges, on the certificate of the registrar that said plantation was free from such claim, loaned to the said Felipe Cuebas y Arredondo, upon what it says it believed was a first mortgage on the property in question, the sum of $20,000. It seems that Cuebas did not pay this debt, and so nearly five years later, on April 2, 1891, he executed a new mortgage to the respondent Banco, in and by which the debt was increased to nearly $44,000. It is also alleged in the several answers of the Banco that it had no knowledge, even at the time of the receiving of this renewal mortgage and of the lending of this additional amount of money, of the existence of any claim on the part of the complainant to any lien upon the property in question. Nor did the Banco, as it alleges, have any such knowledge on April 16, 1901, when its second mortgage was recorded in the registry, because it alleges that the registrar certified that the property was free and clear, save for a small claim of another party.

As alleged in the answers, it seems that at the time the bill here was filed, on March 22, 1904, the whole increased debt of nearly $44,000 from Felipe Cuebas y Arredondo to the respondent El Banco was in default, and such proceedings were had on the part of El Banco against him as that on October 31, 1904, a judicial sale, in an insular court, of the said tract of land took place, at which El Banco itself became the purchaser and the property was adjudicated to it under date of November 29, 1904, when its deed was recorded, and it went into complete possession. Now it must not be forgotten that

Cuebas y Arredondo v. El Blanco Territorial y Agricola.

at this time this court had no jurisdiction of the Banco in this proceeding, and, for that matter, this court never at any time before had, or since has had, jurisdiction of that respondent. It would seem that the remedy of the respondent, if any, then was and still is in the insular court.

The several answers of El Banco, because of this situation, insist that both the twenty-year and the fifteen-year statutes of limitation have barred complainant's claim, and had done so even before the Banco loaned any money at all upon the property in question, and that, independent of the running of these statutes of limitation, the complainant was guilty of the grossest laches, because she was a resident in the immediate vicinity during all of said time, and took no steps of any kind or character, although the Banco alleges she had complete knowledge of the loaning of the money to Cuebas, to notify the Banco or take any steps to assert her rights, if any she had, and did nothing by herself or predecessors to assert her rights for nearly twenty-nine years, from November 25, 1875, the date of the Carbonell mortgage, to March 22, 1904, the date of the filing of her bill.

It is, of course, unquestioned that wherever jurisdiction exists any complainant has a right to choose a United States court as a forum, and it is the settled law that such complainant need not make anyone but indispensable parties respondents in the suit, if making them such would oust the jurisdiction. Equally unquestioned is the right of any respondent to object to action of the court when it, in fact, has no jurisdiction as to such party. When complainant filed her bill, because of the citizenship of the respondents, the court certainly had no jurisdiction, but she could have immediately cured this by dis-

missing as to respondents Antongiorgi and El Banco Territorial y Agricola, who it turned out were both Porto Ricans. It was probably not then generally known that with Porto Ricans on both sides of a case the jurisdiction here was ousted. The question then is: If she had so dismissed as to all respondents save Felipe Cuebas y Arredondo, and he had failed to answer, as he did, would she have been entitled to a decree? Her bill is not sworn to, and, for that matter, neither were any of the answers.

After giving the matter careful and extended thought we cannot avoid the conclusion that she is not, and never has been under the allegations of her bill, entitled to a decree. It appears from the face of the bill that the alleged mortgage claim was more than twenty years and six months old at the time she filed her suit, and under § 1865 of the new Civil Code of Porto Rico (1964 of the old Code), a mortgage action prescribed after twenty years. It might be said that this period begins to run after the mortgage is due and not after it is made, but in this case it does seem to us that her remedy in the first instance was in the insular court, where she could have made El Banco Territorial y Agricola a party, because it does seem to us that it certainly is an indispensable party to the controversy. If her cause of action was not in fact outlawed as against the whole world at the time she filed her bill, then surely it is not even yet prescribed as to El Banco Territorial y Agricola, and she still has her remedy against it wherever she can sue it, because it has had full notice of her claims since the date of the filing of her bill. Whilst at the time of the filing of her bill one of her learned counsel was a strenuous advocate of the position that the old chancery rule of *lis pendens* ob-

Cuebas y Arredondo v. El Banco Territorial y Agricola.

tained in this court in Porto Rico, which position was held not to be the law in Romeu v. Todd, 206 U. S. 358, 51 L. ed. 1093, 27 Sup. Ct. Rep. 724, a cause which he prosecuted to that tribunal, still there is evidence in the files which shows that the counsel of El Banco Territorial y Agricola were notified of the filing of this suit, and, of course, the service of process upon it, and its strenuous battle against the jurisdiction here, which it finally maintained by aid of the ruling in the Asilo de Damas Case, supra, have given the Banco ample notice of complainant's rights, at least since the date of the filing of her bill. In addition to this, there is evidence in the files that an actual effort was made to file a formal notice of *lis pendens* in the registry, after the filing of complainant's bill, but it seems the registrar refused to give it the same effect because it was a notice requested and signed by counsel only instead of being ordered by the court itself.

It may be contended that the knowledge we have, which enabled us to make the statement aforesaid, is obtained in part from some of the several answers, the evidence, and other pleadings in the cause, and all of which it may be claimed has now become unofficial and immaterial in the issue that remains, —but notwithstanding this, depending upon the bill alone, we can well see that the Banco was from the very start an indispensable party to the controversy, and counsel for the complainant were certainly of the same opinion, and manifested it by joining El Banco as a respondent and making a four-year battle in an effort to maintain its Spanish citizenship. On this point, as to the Banco having been an indispensable party from the beginning, we have examined with care the recent brief of the learned counsel for complainant, but it fails

**V. Porto Rico—9.**

Cuebas y Arredondo v. El Banco Territorial y Agricola.

to change our view. We are not, however, admitting that we cannot take notice of the entire record before us, but insist that we can.

We have repeatedly held, in obedience to what we believe is settled law, that this court of equity will not lend its aid to enforce stale demands. See our opinion in Llaneras y Quintana v. La Compañia Ferrea del Oeste, 3 Porto Rico Fed. Rep. 83, 84. See also our opinion in case No. 160, San Juan Division, Dexter v. Cruz de Godinez, 4 Porto Rico Fed. Rep. 181, and see our opinion in equity suits No. 509 and 524, Rufino de Goenaga v. Gallardo and Noble v. Gallardo, to be printed in 5 Porto Rico Fed. Rep. It does seem to us that this bill on its face, being without explanation of any kind or character for the delay of nearly twenty-nine years, does prima facie show that it is an extremely stale demand, and that the complainant is probably, as stated in several of the answers, guilty of the grossest laches in the enforcement of her rights, if she has any. She evidently mentions the acknowledgment of the debt by Cuebas in the power of attorney given to his wife in 1892 as in some measure accounting for this delay, yet she does not allege, and it probably is not the fact, that this power of attorney was recorded in any property registry to give notice to El Banco, or other intending lenders of money or purchasers. Her rights, if she has any, in our opinion cannot now, and at least since she filed her suit could not be settled without making El Banco Territorial y Agricola a party. It has been the real party in interest certainly since 1901, some three years before the filing of her bill, if not since 1896, the time of the first loan by the Banco. At any rate, if she was entitled to the relief her counsel now insist she has a

Cuebas y Arredondo v. El Banco Territorial y Agricola.

right to, and will accept, that is against Cuebas alone, under a decree to be entered *nunc pro tunc* as of more than two years ago before his death, she ought to have brought the suit against him alone in the first instance, and should have enjoined the foreclosure of the bank mortgage by the summary proceedings under which it no doubt was done, instead of relying upon the *lis pendens* theory, which the Supreme Court of the United States has held not to be in force. The court here is, of course, not responsible for this condition.

To grant her the decree she now asks for is too dangerous a proposition; first, because her demand is so stale; second, because in our opinion the rights of others may have grown superior to hers, if any she has; and third, because of the unnecessary complications which would result. The only effect of granting the decree would be to bring two courts of, perhaps to some extent, co-ordinate jurisdiction, and that owe to each other proper comity, into conflict, when complainant's rights, if she has any, against El Banco, which, as stated, is in our opinion the real party in interest, are as good now as they were the day she filed her bill, and hence a tribunal where she can make that concern a respondent is her proper forum. That forum first took possession of the *res* and is the only one in which complainant can sue El Banco, and where she can attack the summary proceeding by which it is intimated in the record the Banco's mortgage was foreclosed without due process of law.

Therefore, this court being wholly without jurisdiction to settle the real controversy, an order will be entered dismissing the bill with costs, including the stenographer's fee of $10, but, for the reasons stated, the dismissal will be without preju-