PEOPLE OF PUERTO RICO, Plaintiff, *v.* THE FAJARDO SUGAR COMPANY OF PORTO RICO ET AL., Defendants.

No. 1. Argued May 16, 1936.—Decided June 4, 1936.

*B. Fernández García,* Attorney General, *M. Guerra Mondragón, R. Rivera Zayas* and *Lester P. Schoene* for plaintiff. *J. Henri Brown, Jaime Sifre Jr.,* and *José A. Poventud* and *Arturo Aponte* for defendants, respectively.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

Upon the petition of the Attorney General of Puerto Rico, this Court, on January 28 last, authorized the filing of an information in the nature of *quo warranto* in this case, and the defendants were granted until the 28th of the following February to demur, answer, or enter any other proper plea.

On the 5th of February, the plaintiff filed a motion for an inspection and copy of certain books, papers, and documents in the possession or under the control of the defendants, and on the 15th of the same month the latter presented their written opposition thereto, based, among other grounds,

upon the claim that this Court, for various reasons which they stated, had no jurisdiction to act in the matter.

The plaintiff moved to strike out from the oppositions certain questions of law raised therein, among them, those relating to the jurisdiction. Both parties were heard on this point and the court ruled that it was not possible to decide the question of inspection while disregarding that of jurisdiction and set March 16, 1936, for further hearing the parties. They were so heard, fully, and in addition they filed briefs in support of their respective contentions, the last of such briefs being filed on May 16, 1936.

What is the question involved? The holding of real estate by agricultural corporations. What does The People of Puerto Rico demand through the Attorney General? That this Court give judgment of ouster from the franchise as against the Fajardo Sugar Company of Porto Rico and the Loíza Sugar Company, decreeing their immediate dissolution, prohibiting them from continuing to do business in Puerto Rico, and imposing on them the proper fines, and as regards The Fajardo Sugar Growers Association, that the same be ordered to cease doing business in this Island; together with any other relief which in equity and justice may be proper as against them all.

It is substantially alleged in the information that The Fajardo Sugar Company of Porto Rico is a corporation organized under the laws of this Island, on February 28, 1919, its object being to engage in agriculture and the manufacture of sugar and it being stipulated in its articles of incorporation that its right to own or control land in Puerto Rico would be limited to five hundred acres, as provided by Section 3 of the Joint Resolution of the Congress of the United States, approved May 1, 1900; and that, notwithstanding this, it acquired all the properties of The Fajardo Sugar Company, a corporation organized under the laws of the State of New York in 1905, engaged in agriculture and the manufacture of sugar in this Island, which, by itself, as well

as through the defendant, The Fajardo Sugar Growers Association, had acquired from time to time the ownership or control of land in Puerto Rico in the aggregate amount of about thirty thousand seven hundred acres.

As regards The Fajardo Sugar Growers Association, it is substantially alleged in the information that it is an entity describing itself as a joint-stock association which was organized under the laws of the State of New York to engage in the growing of sugar cane, and to acquire by purchase, lease, or otherwise, such land as may be necessary to carry out its purposes, and that it having complied with the requirements prescribed by the Private Corporation Act of Puerto Rico, approved March 9, 1911, it was authorized to do business in the Island. Then follow several averments tending to show that it is in fact a corporation.

With respect to the other defendant, Loíza Sugar Company, the information substantially alleges that it is a corporation organized under the laws of Puerto Rico for the purpose of purchasing and leasing land and planting or harvesting sugar cane. As in the case of the defendant first above mentioned, its articles of incorporation specifically provide that its right to own or control real estate, shall be limited to five hundred acres, in accordance with the Joint Resolution of Congress already cited, in spite of which it owned or controlled, on October 6, 1925, about eleven thousand thirty-eight acres of land in the Island.

It is further substantially alleged in the information that on October 6, 1925, defendant The Fajardo Sugar Company of Puerto Rico acquired by purchase the entire capital stock of the Loíza Sugar Company, and still controls 99 per cent thereof and thereby manages and controls its business; that by a public deed executed on January 10, 1935, the Loíza Sugar Company conveyed to The Fajardo Sugar Growers Association, for the purpose of concealing the identity of the true owner thereof, all the agricultural lands which it held or controlled in Puerto Rico, except some five hundred

and ninety-eight acres which it still holds and controls in its own name.

Reference is made in the information to certain instruments executed which, as petitioner claims, show the interdependence of the three defendants; and it is textually alleged: "The total amount of agricultural land which is held or controlled at the present time by said defendant, The Fajardo Sugar Company of Porto Rico, either by itself or through its subsidiaries, or agencies above mentioned, and upon which it is engaged at present in agriculture, as already stated, amounts to some 23,800 acres."

The information concludes by alleging that the ownership or control by the defendants of lands concentrated into large estates is contrary to the public policy of Puerto Rico and is in conflict with the economic welfare of the people of the Island; and it sets forth the facts and circumstances upon which such allegation is based.

The Joint Resolution of which mention has already been made, was approved eighteen days after the territory of Puerto Rico was organized by the Congress of the United States. By its third Section, as the same appears on page XXXV of the Revised Statutes and Codes of Puerto Rico, 1902, it is provided as follows:

"Section 3.—That all franchises, privileges or concessions granted under Section thirty-two of said Act shall provide that the same shall be subject to amendment, alteration, or repeal; shall forbid the issue of stock or bonds, except in exchange for actual cash, or property at a fair valuation, equal in amount to the par value of the stock or bonds issued; shall forbid the declaring of stock or bond dividends; and, in the case of public-service corporations, shall provide for the effective regulation of the charges thereof and for the purchase or taking by the public authorities of their property at a fair and reasonable valuation. No corporation shall be authorized to conduct the business of buying and selling real estate or be permitted to hold or own real estate except such as may be reasonably necessary to enable it to carry out the purposes for which it was created, and every corporation hereafter authorized to engage in agriculture shall by its charter be restricted to the ownership and control of not to

exceed five hundred acres of land; and this provision shall be held to prevent any member of a corporation engaged in agriculture from being in any wise interested in any other corporation engaged in agriculture. Corporations, however, may loan funds upon real estate security, and purchase real estate when necessary for the collection of loans, but they shall dispose of real estate so obtained within five years after receiving the title. Corporations not organized in Porto Rico, and doing business therein, shall be bound by the provisions of this section so far as they are applicable."

The word "corporation" used in the original English text was erroneously rendered *sociedad* in Spanish. We shall proceed on the assumption that the correct translation is *corporación*.

On March 1, 1902, the Legislative Assembly created by the Organic Act of April 2, 1900, enacted a law establishing *quo warranto* proceedings, and on March 9, 1911, another law entitled "An Act to establish a law of private corporations." Both laws were in force at the time that the defendant corporations, The Fajardo Sugar Company and Loíza Sugar Company, were organized and commenced to do business in this Island, and under the provisions of the second of these laws the other defendant was authorized to do business in our community.

Section 2 of the first of the said laws provides, in its pertinent part, "That in case . . . any corporation does or omits any act which amounts to a surrender or forfeiture of its rights and privileges as a corporation, or exercises rights not conferred by law, the Attorney General or any *fiscal* of the respective district courts, either of his own accord or at the instance of any individual relator, may present a petition to the district court of competent jurisdiction, for leave to file an information in the nature of *quo warranto* in the name of The People of Puerto Rico. . ."

Section 6 provided:

"In case any person or corporation against whom any such petition is filed, or adjudged guilty, the court may give judgment of ouster against such person or corporation from the office or franchise,

and fine such person or corporation for usurping, intruding to, or unlawfully holding and executing such office or franchise, and also give judgment in favor of the relator for the costs of the prosecutions: *Provided,* That instead of judgment of ouster from a franchise, the court may fine the person or corporation found guilty in any sum not exceeding five thousand dollars for each offense.''

Section 3 of the Private Corporation Act in so far as now pertinent says:

''Section 3.—Every corporation has power:

''*           *           *           *           *           *           *

''4. To acquire and to hold in any legal manner and to transfer such property, both real and personal, as the purposes expressed in the articles of incorporation may require, and to mortgage such property with its franchises: *Provided, however,* That the power of any agricultural corporation organized under this act to hold real estate shall be subject to the prohibition contained in section three of the joint resolution of the Congress of the United States, of May first, nineteen hundred.'' Laws of 1911, page 87.

Accordingly, in deciding that the question of the holding by a corporation of lands in excess of five hundred acres was not a proper one to be raised by a registrar of property or to be considered and determined within an administrative appeal taken from a decision of such registrar, this Court, after a careful study of the Organic Act of 1900 and of the applicable jurisprudence, said:

''So that ample provision is made in the law by which any violation of the Organic Act may be thoroughly investigated and prosecuted by the Attorney General. If there is any doubt how far the powers of the registrar extend, it is made clear by the provisions of the Organic Act and by Section 73 of the Political Code. The Attorney General is the exclusive officer in whom is confided the right to initiate proceedings for escheat or attach the right of a corporation to hold land. Without some such judicial or quasi-judicial proceedings a corporation might be deprived of some of its property rights without due process of law.'' *Compañía Azucarera de Carolina* v. *Registrar of Property,* 19 P.R.R. 143, 151–153.

Similarly, in referring to the above and other decisions to the same effect, it has recently declared:

"Ever since that time, or more than twenty years ago, the Judicial Power has spoken with entire clearness and has shown the way. The Federal and the Insular, Executive and Legislative Powers, and the community in general were advised. They are the ones who are called upon to act." *Baetjer* v. *Registrar,* 48 P.R.R. 326.

The Joint Resolution of 1900 is still in full force and effect. In enacting, in 1917, the second Organic Act for Puerto Rico, which is the one now in force, Congress provided by Section 39 of the Act:

"That nothing in this Act contained shall be so construed as to abrogate or in any manner impair or affect the provision contained in Section three of the joint resolution approved May first, nineteen hundred, with respect to the buying, selling, or holding of real estate." Laws of Puerto Rico, 1917, volume 2, p. 54.

The *Quo Warranto* Act was amended in 1931 and in 1935. The amendment of 1931 is of no importance. In 1935 there were enacted two amendatory laws, the first one, Act No. 33 of July 22, 1935, in its pertinent part, literally copied reads as follows:

"An Act to confer upon the Supreme Court of Puerto Rico exclusive original jurisdiction in *Quo Warranto* proceedings that the Government of Puerto Rico may institute for violations of the provisions of Section 752, Title 48, United States Code, and for other purposes.
"*Be it enacted by the Legislature of Puerto Rico:*
"Section 1.—There is hereby conferred upon the Supreme Court of Puerto Rico exclusive original jurisdiction to take cognizance of all *Quo Warranto* proceedings that the Government of Puerto Rico may hereafter institute for violations of the provisions of Section 752, Title 48, United States Code, and for that purpose it is provided that the violation of said provisions shall constitute sufficient cause to institute a proceeding of the nature of *Quo Warranto.*"

The second, Act No. 47, approved August 7, 1935, in so far as now pertinent, also textually transcribed reads thus:

"An Act to amend Sections 2 and 6 of 'An Act establishing *Quo Warranto* proceedings, approved March 1, 1902, as amended by Act No. 37, approved April 24, 1931, and for other purposes.

*"Be it enacted by the Legislature of Puerto Rico:*

"Section 1.—Section 2 of An Act entitled 'An Act establishing *Quo Warranto* proceedings', approved, March 1, 1902, is hereby amended as follows:

"Section 2.—In case any person should usurp, or unlawfully hold or execute any public office or should unlawfully make use of any franchise, or likewise shall hold any office in any corporation created by and existing under the laws of Puerto Rico, or any public officer shall have done or suffered any act which, by the provisions of the law, involves a forfeiture of his office, or any association or number of persons shall act within Puerto Rico as a corporation, without being legally incorporated, or any corporation does or omits any act which amounts to a surrender or forfeiture of its rights and privileges as a corporation, or exercises rights not conferred by law, the Attorney General, or any prosecuting attorney of the respective district court, either on his own initiative or at the instance of another person, may file before any district court of Puerto Rico a petition for an information in the nature of *Quo Warranto* in the name of The People of Puerto Rico; or whenever any corporation, by itself or through any other subsidiary or affiliated entity or agent, exercises rights, performs acts, or makes contracts in violation of the express provisions of the Organic Act of Puerto Rico or of any of its statutes, the Attorney General or any district attorney, either on his own initiative or at the instance of another person, may file before the Supreme Court of Puerto Rico a petition for an information in the nature of *Quo Warranto* in the name of The People of Puerto Rico;

"7.     *     *     *     *     *     *     *.

" 'When any corporation by itself or through any other subsidiary or affiliated entity or agent is unlawfully holding, under any title, real estate in Puerto Rico, The People of Puerto Rico may, at its option, through the same proceedings, institute in its behalf the confiscation of such property, or the alienation thereof at public auction, within a term of not more than six months counting from the date on which final sentence is rendered.

" 'In every case, alienation or confiscation shall be through the corresponding indemnity as established in the law of eminent domain.'

"Section 2.—Section 6 of an Act entitled 'An Act establishing *Quo Wararnto* proceedings', approved March 1, 1902, is hereby amended as follows:

" 'Section 6.—In case any person or corporation against whom any such petition is filed, is adjudged guilty, the court may give judg-

ment of ouster against such person or corporation from the office or franchise to which the petition refers, and fine such person or corporation for usurping, intruding in, or unlawfully holding and executing such office or franchise, and also give judgment in favor of the defendant for the costs of the prosecutions; . . .

" 'Whenever, in the opinion of the court, it is satisfactorily established that the corporation or corporations have performed acts or exercised rights not conferred by law, or in violation of the express provisions thereof, the judgment entered shall, in case the defendant is a domestic corporation, decree the dissolution thereof and the prohibition to continue doing business in the country; and in the case of a foreign corporation, the nullity of all acts done and contracts made by the defendant corporation or entity; and in addition, said judgment shall decree the cancellation of every entry or registration made by the said corporations in the public registries of Puerto Rico; and when the decree of nullity affects real property and The People of Puerto Rico has chosen to confiscate it or orders it sold at public auction, the final judgment shall fix the reasonable price to be paid for said property. For these purposes, the just value of the property subject to alienation or confiscation shall be fixed in the same manner as it is fixed in cases of condemnation proceedings.

" 'The violation of an order prohibiting the doing of business after final judgment is rendered shall be punished by a maximum fine of five hundred (500) dollars for each day such entity may continue in operation, enforceable on the property of the entity, and the persons representing it shall be guilty of contempt of court, punishable by imprisonment for a minimum term of from one to six months in jail.

" 'Whenever judgment is rendered in favor of any defendant, such defendant may recover costs from the plaintiff, including a reasonable attorney's fee.

" 'For the purpose of fixing the value of the property, The People of Puerto Rico, through its agents or representatives, is authorized to enter the properties the object of the controversy, whatever their nature or condition may be.' "

Such are the facts and the law involved in this case.

The procedure to be followed was fixed by the Legislature. The jurisdiction of this Court seems to be something not subject to any doubt. Yet, everything has been ques-

tioned in a manner so complicated and laborious that it has been no easy task to revert to the first impression.

▮ The Fajardo Sugar Growers Association maintains that it is not a corporation and that, not being one, it can not be charged with the violation of any law by reason of its owning or controlling more than five hundred acres.

Conceding without holding that this is so, it is no obstacle, in view of the acts charged against this entity in the information, to our concluding that it has properly been brought into court. If the Court has jurisdiction to pass upon the acts committed by the other two defendants, whose corporate character is beyond question, it also has jurisdiction to pass upon its acts, since all such acts, it is alleged, are so inter-related that they constitute a single transaction.

In view of the terms of the information, the central entity violating the law appears to be the defendant, The Fajardo Sugar Company of Porto Rico. Defendants The Fajardo Sugar Growers Association and Loíza Sugar Company are, according to the information, its subsidiaries; they consti- tute the agencies employed for controlling and holding land in excess of the amount permitted by the law and by its own articles of incorporation, or franchise. At this stage of the proceeding, we must be guided by the allegations of the information.

▮ Defendant The Fajardo Sugar Company attacks Acts Nos. 33 and 47 of 1935 as being unconstitutional because, in its judgment, they amend the Joint Resolution of 1900 enacted by Congress and invade the legislative sphere reserved to the latter; because the Legislature of Puerto Rico has no power to impose penalties for violations of the laws of the United States; because they contain more than one subject and subjects not clearly expressed in their titles; because they revise, amend, or extend provisions of the laws of the United States and of Puerto Rico without reenacting and publishing at length such laws; because Act No. 47 is an *ex post facto* law, impairs the obligation of contracts, and

deprives the defendant of due process of law; and because both acts are so indefinite as to be rendered void.

The defendant Loíza Sugar Company sets up similar objections to the above, and in addition it maintains that the Joint Resolution of Congress is unconstitutional as being discriminatory and arbitrary.

Under the view we have taken of the case, the consideration and decision of all questions raised relating to the imposition of new penalties by the said laws can and should be dispensed with for the present, confining ourselves to the examination and determination of the question whether such laws could confer and did confer upon this Court original jurisdiction to take cognizance of *quo warranto* proceedings brought against corporations holding lands in excess of the authorized amount.

It is provided in the eighth and ninth paragraphs of Section 34 of our Organic Act that—

"No bill except general appropriation bills, shall be passed containing more than one subject which shall be clearly expressed in its title; but if any subject shall be embraced-in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed.

"No law shall be revived, or amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length."

We know the titles of Acts Nos. 33 and 47. The first of these titles begins thus: "An Act to confer upon the Supreme Court of Puerto Rico exclusive original jurisdiction in *Quo Warranto* proceedings . . ." It is conclusive. The second begins as follows: "An Act to amend Sections 2 and 6 of 'An Act establishing *Quo Warranto* proceedings . . ." The amendment includes the jurisdiction. The constitutional precept has been substantially complied with.

■■ But it is insisted that Act No. 33 conferred jurisdiction to take cognizance of violations of a law of Congress

and Act No. 47 amended the said law by imposing penalties, as to all which the Insular Legislature has no power.

It is evident that the Legislative Assembly of Puerto Rico has no power to invade the sphere of action of Congress, nor to amend any Federal statute. Therefore, should Acts Nos. 33 and 47 have the effect of invading that sphere or amending the Joint Resolution of May 1, 1900, they would be without any validity. But in our judgment, in so far as the question of jurisdiction is concerned, the said acts to not invade the field reserved to Congress, nor amend its Joint Resolution cited. Whether such invasion has occurred as regards the new penalties is a separable question, which, as we have stated, need not be now considered.

Puerto Rico is a fully organized territory. It has many of the attributes of, and may be compared in some respects to, a state of the Union. In the exercise of its legislative powers, it enacted the Private Corporation Act to which we have previously referred, and all corporations organized under such act remain subject thereto.

It is incumbent on Puerto Rico not only to enact, as it enacted, laws regarding corporations but also to watch for their execution. For this reason it enacted, in 1902, the law establishing *quo warranto* proceedings; a law of which the defendants had knowledge and to whose provisions they were subjected from the moment they were organized and began to act.

The Loíza Sugar Company alleges that "the limitation arising from the Joint Resolution of 1900 does not merge into the local articles of incorporation nor lose its source, identity, or character as a restriction imposed by the Congress of the United States."

It must be conceded that the limitation as to the holding of lands by corporations had its origin in the Joint Resolution of Congress; but this circumstance, as the plaintiff says, "has nothing to do and should never be confused with the body of juridical relations arising therefrom and

which is the one having a bearing upon the solution of the questions at issue in this proceeding. Within the limits of the Constitution of the United States ("constitution" in the broad sense which includes governmental traditions), due to a most delicate adjustment, there coexist, without friction and within their respective spheres, a federal government and the governments of the states and territories. In order to preserve that fine balance and the separation of powers, the federal government takes great care not to interfere in purely local matters pertaining to the states or the territories. For instance, the federal government never interferes directly in the regulation of corporations created or authorized to do business by the state or territorial sovereignties."

As an aid to clearly establishing that in the case of Puerto Rico the American tradition of government was followed, it seems advisable to transcribe below what was said by the Supreme Court of the United States, speaking through Mr. Justice Moody, in *Martínez* v. *Asociación de Señoras Damas del Santo Asilo de Ponce*, 213 U.S. 20, 23, thus:

"By the treaty of peace (30 Stat. 1754), Spain ceded Porto Rico to the United States and thereby parted with all sovereignty over that island. Careful provision was made that the cession should not impair the property or rights of corporations, associations or individuals. Article VIII. It is clear, however, that thereafter the duty to protect property and rights within the ceded territory rested upon the United States. An opportuniy was afforded to Spanish subjects, natives of the peninsula, to preserve their allegiance to the crown of Spain by making within a limited time a declaration to that effect. Article IX. This article obviously had no reference to corporations. No other provisions of the treaty seem relevant to the question before us.

"We are of opinion that the cession of Porto Rico by Spain to the United States severed all relations between Spain and this corporation, and that thereafter it cannot be regarded in any sense as a citizen or subject of Spain. Spain has no duty to or power over it . . .

"The next question is whether the plaintiff corporation is a citizen of the United States. Its status during the period between the ces-

sion and the passage of the act to provide a civil government for the island need not be determined. That act created a form of government for Porto Rico and its adjacent islands, in which there was exhibited, with some modifications, the characteristic American separation of the legislative, executive and judicial powers . . . . and the scope of the legislative power is fully described in paragraph 32, as follows:

" 'That the legislative authority herein provided shall extend to all matters of a legislative character not locally inapplicable, including power to create, consolidate, and reorganize the municipalities, so far as may be necessary, and to provide and repeal laws and ordinances therefor; and also the power to alter, amend, modify, and repeal any and all laws and ordinances of every character now in force in Porto Rico, or any municipality or district thereof, not inconsistent with the provisions hereof: *Provided, however,* That all grants of franchises, rights, and privileges or concessions of a public or quasi-public nature shall be made by the executive council, with the approval of the governor, and all franchises granted in Porto Rico shall be reported to Congress, which hereby reserves the power to annul or modify the same.'

"In the form of government, which is typically American, the creation and control of corporations is exclusively a legislative function. We are of opinion that the effect of the organic act is to intrust that function, so far as it relates to a corporation of the kind under consideration, whose essential qualities need not be repeated, to the government of Porto Rico; and that such corporation is now, if a citizen of any country, a citizen of Porto Rico. We need not consider whether the corporation has more than a *de facto* existence, subject to the will of the Porto Rican legislature."

This holding of the Supreme Court remains applicable even after the enactment of the second organic act, as what Congress did by such act was to continue carrying out its clear purpose to establish in this Island a typically American form of government.

Guided by that rule, we think that the plaintiff is right when it maintains, referring to the Joint Resolution of Congress, that "it is a statute of a purely constitutional character; an amendment to our Organic Act having no other function or scope than to limit the power delegated to our

Legislature to create and regulate the juridical persons engaged in agriculture.''

As an indication that Congress reserved to itself the power to regulate its prohibition, the defendants strongly rely upon the provisions enacted in the second part of paragraph second of Section 39 of the Organic Act of 1917, thus:

"That the Governor of Porto Rico shall cause to have made and submitted to Congress at the session beginning the first Monday in December, nineteen hundred and seventeen, a report of all the real estate used for the purposes of agriculture and held either directly or indirectly by corporations, partnerships, or individuals in holdings in excess of five hundred acres.''

However, it is a fact that the amendment, as originally offered and as adopted by the Senate, contained at the end of Section 39 the following provision: ''That the right to legislate further upon this subject is reserved to Congress.'' (Congressional Record, February 10, 1917, p. 3385.) The House disagreed. The Senate acquiesced. (Id., February 23, p. 3995.) Thereupon this provision was stricken out and the act approved in the form known to us.

The Resolution provides:

''. . . . and every corporation hereafter authorized to engage in agriculture shall by its charter be restricted to the ownership and control of not to exceed five hundred acres . . .'' ·

The Organic Act as a whole shows that Congress was establishing a territorial form of government, endowed with the same control over the corporations created by it or doing business within its limits as might be possessed by a state or any other territory. Consequently, since the franchises are granted by Puerto Rico and its Government has control over the corporations existing within its limits, the inference is unavoidable that a violation of the franchise or the holding of land in excess of five hundred acres is a local question. It is inconceivable that violations of a corporate charter or of the Organic Act should be excluded from the

control of Puerto Rico. It might be equally possibly to say that a violation of the so-called "bill of rights" is a matter of exclusive federal jurisdiction, and similarly in regard to any other provision of the Organic Act.

■ The question of whether the Insular Legislature could confer on this Supreme Court original jurisdiction is one which we regard as settled in the affirmative by the law and the jurisprudence. Section 40 of the Organic Act of 1917. *Municipality of Ponce* v. *Roman Catholic Church,* 210 U.S. 296.

The case of *Ferris* v. *Higley,* 87 U.S. 375, invoked by defendant The Fajardo Sugar Company, does not change our views. It has been extensively analyzed and discussed by the plaintiff in its second brief (Record, pp. 10–16; 763–789). We have nothing to add thereto.

As regards the contention that the Legislature of Puerto Rico can not deprive the Federal Court of jurisdiction, it will suffice to say that the fact that by Act No. 33 exclusive jurisdiction is conferred on this Court, can not and should not be interpreted in the sence of impairing any concurrent jurisdiction which the Federal Court may have. The term used, when correctly interpreted, applies solely to those courts which the Legislature has power to organize or reorganize, that is, the Insular courts. Statutes should be interpreted with a view to vitalizing them, unless they really violate the paramount law, the Constitution.

■ Lastly, and without going into a detailed discussion, we will say that, in our judgment, the Joint Resolution of Congress of May 1, 1900, is neither discriminatory nor arbitrary in itself, or to any extent rendering the same unconstitutional.

In constituting the Island of Puerto Rico into an organized territory, Congress thought that, in view of its territorial extent, its lands might be monopolized by one or more powerful corporations and, considering that this result might be harmful to its future development, it fixed its policy on

the matter by prescribing a limitation on the powers of the new-born Legislature, which was to have charge of the enactment of laws respecting corporations.

Corporations may be restricted by a constitution. We fail to see, especially in an agricultural community, that a limitation as to the number of acres that may be controlled by a corporation engaged in agriculture, or the prevention of an agricultural monopoly, constitutes an unjust discrimination. And nothing has been cited to us showing that the unrestricted privilege existing in regard to other persons or corporations causes any prejudice.

It may be argued whether the limit of five hundred acres was or was not wisely chosen, but not that it is unreasonable. If the manufacturing business is separated from the agricultural business, it is possible to conceive the establishment of corporations which will erect and operate great factories for the extraction of sugar from cane, grown independently by tens or hundreds of individuals or corporations engaged in this work upon their directly managed lands, thereby increasing business activity and multiplying the number of efficient, self-supporting citizens and families which, in well-organized communities, constitute the safest and most stable foundation for a normal and orderly progressive life.

The fact that for corporations engaged in agriculture there should have been fixed a definite limitation—five hundred acres—leaving the determination of that pertaining to other corporations to such as may be reasonably necessary to carry out their objects, does not involve a discrimination.

It is difficult to conceive how the other corporations will need five hundred acres of land for the erection of their factories, for the development of their business; but perhaps one of them, for instance, one engaged in the mining business, might find it necessary to extend its holdings in consequence of its investigations, and in such a case it would indeed be unreasonable to destroy the unity of exploitation by virtue of a previously fixed limitation.

By reason of the foregoing and all that appears from the record itself, the objection raised by the defendants to the jurisdiction of this Court must be overruled and the case ordered to be proceeded with in accordance with the law.

Mr. Justice Córdova Dávila is not present at the reading and approval of the opinion on which this order is based nor has he had an opportunity of reading it, but he was present at the final hearing in which the question of jurisdiction was argued, and he took part in the discussion of the matter by the court, and I am authorized by him to state that he is of the opinion that this court has jurisdiction.

Mr. Justice Travieso took no part in the decision of this case.